**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

BMO BANK N.A.,                                :        Civil Action No. __24-cv-6897__

                                             :

                    Plaintiff,               :        **COMPLAINT**
vs.

PRATEEK GATTANI                               :

                    Defendant.               :
-------------------------------------------------------------X

        Plaintiff BMO Bank N.A. ("BMO"), by and through its attorneys Sidley Austin

LLP, alleges the following for its complaint against Prateek Gattani ("Gattani"):

## NATURE OF THE ACTION

        1.        BMO brings this action to enforce a personal guaranty (the "Guaranty")

executed by Gattani with respect to amounts indisputably owed under that certain ABL Credit

Agreement, as amended, between BMO and certain borrowers, including Lyneer Investments,

LLC, a Delaware limited liability company, Lyneer Holdings, Inc., a Delaware corporation,

Lyneer Staffing Solutions, LLC, a Delaware limited liability company, and IDC Technologies,

Inc. (the "Credit Agreement"). The latter is a California corporation, a company Gattani owns

and controls, including as majority shareholder, President and CEO. Pursuant to the Guaranty,

Gattani "unconditionally," "absolutely" and "irrevocably" guaranteed and promised to pay the

"full and punctual payment when due" of all Obligations of the Borrowers under the Credit

Agreement. (All capitalized terms have the same meaning as in the Credit Agreement and

Guaranty unless otherwise defined herein.) Gattani has improperly refused to pay what is owed

under the Guaranty, after receiving timely notice to do so, which constitutes a breach of the

Guaranty and necessitates the commencement of this action to recover the amounts owed.

2.      In the Guaranty, Gattani also expressly and unconditionally waived all defenses, set-offs and counterclaims he may otherwise have had.  The amount Gattani owes, including all interest and other expenses as of September 11, 2024, is not less than $51,903,129.28.  Because this is a simple and straightforward action to collect on the clear and unambiguous personal Guaranty that Gattani made as part of the consideration required by BMO in order to induce it to enter into the Credit Agreement, BMO respectfully submits that this case be adjudicated quickly, and judgment entered as soon as possible.

## THE PARTIES

3.      Plaintiff BMO is a privately-held National Association with its principal place of business in Chicago, Illinois, and is wholly-owned by BMO Financial Corporation, a Delaware holding company that is not publicly traded.  BMO Financial Corporation is wholly-owned by the Bank of Montreal, Toronto, Canada.  Bank of Montreal therefore indirectly owns 10% or more of BMO Bank N.A.  Pursuant to the Guaranty executed by Gattani in favor of BMO, Plaintiff BMO is the Administrative Agent ("Agent").  Plaintiff BMO brings this action as Agent.

4.      Upon information and belief, defendant Gattani is an individual residing in California.  Defendant Gattani is the majority shareholder, President and CEO of one of the Borrowers under the Credit Agreement, IDC Technologies, Inc., a California corporation.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because this matter is between citizens of different states and the amount in controversy exceeds $75,000.00.

6.     Pursuant to Section 12(g) of the Guaranty and Section 11.14(b) of the Credit Agreement, Gattani has contractually consented to personal jurisdiction in this District.

7.     Pursuant to Section 12(g) of the Guaranty and Section 11.14(c) of the Credit Agreement, Gattani has contractually agreed that venue is proper in this district.

## FACTS GIVING RISE TO THIS ACTION

8.     On August 31, 2021, certain financial institutions, as lenders ("Lenders"), IDC Technologies, Inc., Lyneer Investments, LLC, Lyneer Holdings, Inc., and Lyneer Staffing Solutions, LLC, as borrowers ("Borrowers"), and BMO, as Administrative Agent, entered into the Credit Agreement.

9.     Pursuant to the Credit Agreement, Lenders agreed to extend a revolving credit facility to the Borrowers, the proceeds of which were intended to be applied to fund certain acquisitions, refinance certain existing indebtedness, fund working capital and be used for general corporate purposes.

10.     As part of the consideration provided to Lenders, which also was a material condition to Lenders entering into the Credit Agreement, Gattani executed a personal guaranty, dated August 31, 2021, in favor of BMO, "as administrative agent . . . for itself and on behalf of the Lenders from time to time party to the Credit Agreement . . . and other Secured Parties."

11.     Pursuant to Section 1(a) of the Guaranty, Gattani "unconditionally, jointly and severally, absolutely and irrevocably guarantee[d], as primary obligor and not merely as surety, and promise[d] to pay to [BMO] for the benefit of the Lenders, and to the Lenders, on demand, in lawful money of the United States, the full and punctual payment when due of all

3

Obligations of the Borrowers and each other Loan party arising under the [Credit Agreement], whether existing on [that date] or [later] incurred or created."

12.    Section 1(a) of the Guaranty provides that Gattani's liability is "independent of the Obligations of the Borrowers and any other Loan Party, and a separate action or actions may be brought and prosecuted against the Guarantor irrespective of whether action is brought against the Borrowers or any other guarantor of the Obligations or whether any Borrower or any other guarantor of the Obligations is joined in any such action or actions."

13.    Pursuant to Section 3 of the Guaranty, Gattani waived, "to the fullest extent permitted by applicable law, any and all notice of the creation, renewal, extension or accrual of any of the Obligations and notice of or proof of reliance by the Agent or any other Lender upon the [Guaranty] or acceptance of the [Guaranty]," and "[t]he Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred, or renewed, extended, amended or waived, in reliance upon the [Guaranty]."  Gattani waived in Section 3 of the Guaranty "diligence, presentment, protest, demand for payment and notice of default or nonpayment to or upon the Borrowers, any other Loan Party or the Guarantor with respect to the Obligations."

14.    Pursuant to Section 3 of the Guaranty, Gattani "underst[ood] and agree[d] that the [Guaranty] shall be construed as a continuing, absolute and unconditional guarantee of payment without regard, to the extent permitted by applicable law, to

 a. the validity or enforceability of the Credit Agreement or any other Loan Document[,] . . . any of the Obligations or any other collateral security therefor or guarantee or right of offset with respect thereto any time or from time to time held by the Agent or any Lender,

4

b.  any defense, set-off or counterclaim (other than a defense that the Obligations have been paid in full) . . . available . . . or asserted . . .

c.  any other circumstance whatsoever . . . which constitutes, or might be construed to constitute, an equitable or legal discharge of the Borrowers for the Obligations, or of the Guarantor under the [Guaranty], in bankruptcy, workout, insolvency, reorganization, arrangement, liquidation or dissolution or in any other instance,

d.  the absence of (i) any attempt to collect any Obligation . . . from the Borrowers or any other Loan Party or other action to enforce the same or (ii) any action to enforce any Loan Document or any Lien thereunder,

e.  the failure by any Person to take any steps to perfect and maintain any Lien on, or to preserve any rights with respect to, any Collateral, or

f.  any foreclosure, whether or not through judicial sale, and any other sale or other disposition of any Collateral or any election following the occurrence of an Event of Default by and Lender to proceed separately against any Collateral in accordance with such Lender's rights under any applicable law."

15.    On August 12, 2024, the Borrowers, BMO, the Lenders and other parties agreed to a Ninth Amendment to the Credit Agreement and a Forbearance Agreement ("Ninth Amendment"). Pursuant to Section 1(a) of the Ninth Amendment, "[t]he Loan Parties . . . acknowledge[d] and agree[d] that the Specified Events of Default ha[d] occurred and [were] continuing, constitute[d] Events of Default, and entitle[d] [BMO] and each lender to exercise its rights and remedies under the Loan Documents, applicable law or otherwise, *including*, without limitation, *by exercising the right to declare the Obligations to be immediately due and payable under the terms of the Loan Documents*." (emphasis added.)

5

16.     The Events of Default that BMO, Borrowers and Gattani acknowledged in the Preliminary Statements Section of the Ninth Amendment include the following Specified Events of Default pursuant to:

a.  Section 9.01(a) of the Credit Agreement due to the Borrowers' breach of Section 2.06(b)(vi) of the Credit Agreement by failing to repay an Overadvance in the amount of $4,662,495";

b.  Section 9.01(b) of the Credit Agreement due to the Borrowers' breach of Section 7.23(c) of the Credit Agreement by failing to consummate the "Initial Capital Raise" (as defined in the Credit Agreement) on or before May 15, 2024 and apply the proceeds thereof as specified therein;

c.  Section 9.01(b) of the Credit Agreement due to the Borrowers' breach of Section 7.23(d) of the Credit Agreement by failing to have completed presentations by their respective management teams on or before May 22, 2024 to potential buyers under a sale and potential lenders in respect of a refinancing transaction resulting in Payment in Full of all Obligations;

d.  Section 9.01(b) of the Credit Agreement due to the Borrowers' breach of Section 7.23(e) of the Credit Agreement by failing to deliver to the Administrative Agent an executed letter of intent related to the "Sale/Refinancing" (as defined in the Credit Agreement);

e.  Section 9.01(b) of the Credit Agreement due to the Borrowers' breach of Section 8.12(d) for each of the calendar weeks beginning with the calendar week ended May 10, 2024;

6

    f.   Section 9.01(b) of the Credit Agreement due to the Borrowers' breach of Section 8.12(e) as of May 10, 2024; and

    g.   "Section 9.01(b) of the Credit Agreement as a result of Borrowers' failure to comply with Section 7.03(a) of the Credit Agreement with respect to the defaults described in the foregoing clauses [(a) - (f)]."

17.    Pursuant to Section 1(b) of the Ninth Amendment, BMO and Lenders agreed to "forbear from exercising their rights and remedies under the Loan Documents, applicable law or otherwise in respect of or arising out of the Specified Events of Default, for the period (the 'Forbearance Period') commencing [August 12, 2024] and ending on the date which is the earlier of: (i) September 30, 2024 or (ii) the occurrence or existence of any Event of Default, other than the Specified Events of Default . . . ."

18.    Pursuant to Section 1(b) of the Ninth Amendment, Borrowers expressly agreed that the effect of a termination of the Ninth Amendment and its temporary forbearance of the Specified Events of Default "w[ould] . . . permit BMO and Lenders to exercise immediately all rights and remedies under the Loan Documents and applicable law, including, but not limited to, (i) ceasing to make any further Loans and (ii) *accelerating all of the Obligations*; in each case *without any further notice* to any Loan Party, passage of time or forbearance of any kind." (emphasis added.)

19.    Additional Events of Default other than the Specified Events of Default listed in the Ninth Amendment have occurred since Borrowers, BMO and Gattani agreed to the Ninth Amendment.  Specifically, on September 10, 2024, BMO noticed the following Events of Default by the Borrowers, each of which is herein alleged to have occurred:

a. Pursuant to Section 9.01(a) of the Credit Agreement due to the Borrowers' breach of Section 2.01(a) of the Credit Agreement as a result of the Total Revolving Credit Outstandings exceeding the BMO Loan Cap on each of the following days: August 12, 2024, August 19, 2024, August 21, 2024, August 23, 2024 through August 26, 2024 and August 28, 2024 through September 8, 2024; and

b. Pursuant to Section 9.01(b) of the Credit Agreement due to the Borrowers' breach of Section 8.12(e) of the Credit Agreement by failing to comply with the BMO Overadvance Cap on each of the following days: August 12, 2024 through September 8, 2024.

20.     These additional Events of Default constitute an additional basis for the termination of the Forbearance Period.

21.     Pursuant to Section 12.01 of the Credit Agreement, Gattani as a Guarantor absolutely and unconditionally guaranteed prompt payment when due any and all "principal, interest, premiums, fees, indemnities, damages, costs, actual out-of-pocket expenses or otherwise, of the Borrowers to the Secured Parties, arising [under the Credit Agreement] or any other Loan Document (including all renewals, extensions, amendments, refinancings and other modifications thereof and all costs, reasonable attorneys' fees incurred by the Secured Parties in connection with the collection or enforcement thereof) . . . ."

22.     Pursuant to the Credit Agreement and the Ninth Amendment, Borrowers owe outstanding unpaid debt as of September 11, 2024 in an amount not less than $51,903,129.28, with the final amount to be determined at trial.

23.     On September 11, 2024, BMO demanded payment from Gattani.  As of the date hereof, Gattani has failed to pay the amount owed.

## CAUSE OF ACTION AGAINST GATTANI
### Breach of Contract

24.    Plaintiff BMO repeats and realleges each allegation set forth in paragraphs one through 23 of this Complaint with the same force and effect as if fully set forth here.

25.    All conditions precedent to bringing this action have been performed or have occurred and BMO has fully complied with all of its contractual duties.

26.    Borrowers are in default of the Credit Agreement.

27.    Upon acceleration resulting from Borrowers' default, the full amount owed to BMO pursuant to the Credit Agreement as of September 11, 2024 is not less than $51,903,129.28.  Default interest continues to accrue on a daily basis.

28.    The Guaranty is a valid and binding contract.  Pursuant to the Guaranty, Gattani unconditionally guaranteed performance of all of Borrowers' obligations under the Credit Agreement.

29.    On September 11, 2024, BMO sent Gattani a demand for payment of the amounts due and owing under the Credit Agreement, which Borrowers had not paid.   Despite BMO's demands, Gattani has failed and refused, and continues to fail and refuse, to make the payments required by the Guaranty.

30.    Gattani has breached the Guaranty by failing to timely make the payments due under the Guaranty.

31.    As a result of Gattani's breach, BMO has incurred damages in an amount to be proven at trial, but not less than $51,903,129.28.

32.    BMO has incurred legal fees and expenses in connection with collecting the monies due and owing to BMO under the Guaranty, and has and will incur attorneys' fees as a result thereof.

9

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of BMO and an award to BMO of not less than $51,903,129.28, plus default interest, pre- and post-judgment interest, attorneys' fees, costs, and expenses, and such other relief as the Court deems just and proper.

Dated: New York, New York
        September 12, 2024

                                    SIDLEY AUSTIN LLP

                                    By: _____
                                        John J. Kuster
                                        Jon W. Muenz
                                        Sidley Austin LLP
                                        787 Seventh Ave.
                                        New York, NY 10019
                                        jkuster@sidley.com
                                        jmuenz@sidley.com

                                        *Attorneys for Plaintiff BMO Bank N.A.*